No. 23-50524

# In the United States Court of Appeals
## for the Fifth Circuit

**ROBERT WHITE**, on behalf of himself
and a class of those similarly situated

PLAINTIFF – APPELLEE

V.

**PATRIOT ERECTORS, L.L.C.**

DEFENDANT – APPELLANT

_____

On Appeal from the United States District Court
Western District of Texas, Austin Division
No. 2:19-CV-00244

_____

**REPLY BRIEF OF APPELLANT**

_____

Kane Russell Logan Coleman PC
Andrea M. Johnson TBN 10679600
5151 San Felipe Street, Suite 800
Houston, Texas 77056
Telephone: (713) 425-7433
Fax: (713) 4425-8800

**Attorney for Appellant
Patriot Erectors LLC**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………………..iii

TABLE OF AUTHORITIES……………………………………..………vi

REPLY ARGUMENT AND AUTHORITIES.......................................................... 1

A.    Summary of the Reply Argument ................................................... 1

B.    Reply Argument and Authorities…………………………………3

      1. Without Question, an Employee Should Be Paid for All Hours the Employer "Permits" and "Suffers" Him to Work; thus, Liability Follows, if the Employer *Knows* that the Employee Is Working, Not Recording Time, and not Being paid—*But that is Not What Occurred Here*..………………………………3

      2. White's Own Personal Time Log Contradicts His Claim…….5

      3. White's Scant and Vague Testimony about Herzog Is Insufficient and Cannot Legally Be the Basis for Liability as an Off-the-Clock Claim;  Rather, the Facts Here, White's Position and Autonomy, and the Lack of Complaints (until Eight Months after He Left Patriot) Do Not Justify the Imposition of Off-the-Clock Liability…………………………..5

      4. The Error Here Is that the Trial Court Essentially Treated White as if He Were a Shift Worker—*But White Was Not a Shift Worker—He Controlled His Hours 100% and Recorded His Time on His Own*…………………………………………..6

      5. Instead, White Was Required, *as He Well Knew*, to Adhere to Patriot's Time Recording Requirements; *His Failure to Do So Should not Be Permitted, Particularly as There Is No Evidence of Coercion to Not Record Time, or Discouragement or Prevention from Inputting Time, or  Discouragement, or Instruction about Not Inputting Time*………………………….7

6. Even Assuming that White Had Worked Unreported Hours, that Is Not the Deciding Factor..........................................10

7. There Are Very Limited Exceptions to the Rule about Adhering to the Employer's Time-keeping Rules—*None of which Apply to White*..............................................11

8. Patriot Did Not Have the Required Knowledge that White Was Not Being Compensated for His Time....................11

9. Patriot's Time-recording Policies Dispel an Assumption of Knowledge and Estop White from Claiming Off-the-Clock Compensation...............................................................15

10. Coercion Might Be a Basis for Overcoming the Presumption that Time-recording Policies Had to be Followed—*But White Has No Evidence of "Coercion"—to the Opposite*............................................................16

11. Forcing or Pressuring an Employee to Follow a Set Schedule and Only Record Those Scheduled Hours Might Be a Basis for Overcoming the Presumption that Time-recording Policies Had to be Followed—*But White Has No Evidence of Being Forced or Pressured to Record, for Example, Only Shift Hours--—to the Opposite*............................................17

12. Deletion of Time or a Refusal to Pay Might Be a Basis for Overcoming the Presumption that Time-recording Policies Had to be Followed—*But White Has No Evidence Having His Time Deleted—to the Opposite*....................................18

13. "Squelching" Time-recoding Might Be a Basis for Overcoming the Presumption that Time-recording Policies Had to be Followed—*But White Has No Evidence of His Time Being "Squelched"—to the Opposite*................................19

iv

14.    Actual Knowledge of Falsified Records Might Be a Basis for Overcoming the Presumption that Time-recording Policies Had to be Followed—*But White Has No Evidence of that Patriot Knew He Had Falsified Records—to the Opposite*…20

15.    Had White Complained that Might Be a Factor for Overcoming the Presumption that Time-recording Policies Had to be Followed—*But White Never Complained*……… 21

16.    White's Personal Choices about Not Recording Time Do Not Are Not Facts for Overcoming the Presumption that Time-recording Policies Had to be Followed…………………22

17.    White's Case Hangs on His Reported "Couple of" Conversations with Herzog, *But that Evidence Is Insufficient as a Matter of Law*……………………………………………………22

CONCLUSION ..............................................................30

CERTIFICATE OF SERVICE ........................................32

CERTIFICATE OF COMPLIANCE .................................33

## TABLE OF AUTHORITIES

**Cases**                                                                                 **Pages**

*Allen v. City of Chicago***,** 865 F.3d 936, 943 (7th Cir. 2017), *cert. denied*, 583 U.S. 1182 (2018)……………………………………………………....12

*Boelk v. AT&T Teleholdings, Inc.,* No. 12-cv-40-bbc, 2013 WL 377251, at *8  (W.D. Wis. July 19, 2013)………………………… 12, 14, 18, 19, 22, 25

*Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 ..................... 9,15 (5th Cir. 1972)

*Darrikhuma v. Southland Corp.,* 975 F.Supp. 778, 783–84 (D.Md.1997), *aff'd,* 129 F.3d 1258 (4th Cir.1997)…………………………12

*Davis v. Food Lion, Inc.,* 792 F.2d 1274, 1276 (4th Cir.1986)……………………………………………….13,17, 20, 21, 22

*Edmiston v. Skinnys, Inc.*2003 WL 22228737, at *5-6 (N.D. Tex. Sept. 15, 2023)……………………………………………………11, 18, 30

*Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414 (9thCir.1981))………………………………………………4, 8, 13, 16, 28

*Gaines v. K-Five Const. Corp.,* 742 F.3d 256, 270-71 (7th Cir. 2014)……………………………………………………12, 27

*Harvill v. Westward Comms., L.L.C.*, 433 F.2d 428, 44…………………16 (5th  Cir. 2005)

*Laughlin v. Jim Fischer, Inc.*, Case I, 16-C-1342, 2019 WL 1440406, at *3 (E.D. Wis. May 16, 2019)………………………………………....16

*Meadows v. NCR Corp.,* No. 16 CV 6221, 2017 WL 5192009, at *4 (N.D. Ill. Nov. 9, 2017)............................................................11, 17, 19

*Millington v. Morrow County Bd. of Comm'rs,* No. 2:06-cv-347, 2007 WL 2908817, at *10 (S.D. Ohio Oct. 4, 2007).......................................8-9

*Nieddu v. Lifetime Fitness, Inc.,* 38 F.Supp.3d 849, 869-870...................8 (S.D. Tex. 2014)

*Perry v. City of New York,* 13-CV-1015 (VSB), 2019 WL 1146581, at *7 (S.D.N.Y. March 13, 2019)......................................................12, 18

*Pforr v. Food Lion, Inc.,* 851 F.2d 106, 109 (4th Cir. 1988)......14, 25, 29

*Richardson v. Alliance Residential Co.,* Civ. Action No. ELH-18-1114, 2020 WL 551316, at *10 (D. Md. Feb. 4, 2020)...................8, 16, 25, 28

*Schremp v. Langlade County,* No. 11-C-590,  2012 WL 3113177, at *3 (E.D. Wis. July 31, 2012)................................................21, 27, 29

*Von Friewalde v. Boeing Aerospace Ops., Inc.,* ........................................7 339 Fed. Appx. 448 (5th Cir. 2009)

*Walling v. Woodruff,* 49 F.Supp. 52, 56 (M.D.Ga.1942) .....................15

*White v. Baptist Mem. Health Care Corp.,* 699 F.3d 869, 876 (6th Cir. 2012)..........................................................7, 12, 15, 25

## Rules

Fed. R. App. P. 32(a)(5).................................................................33

Fed. R. App. P. 32(a)(7)(B)(i)........................................................33

## REPLY ARGUMENT AND AUTHORITIES

## A. SUMMARY OF THE REPLY ARGUMENT

The trial court's decision should be overturned because (1) the facts do not support the off-the-clock allegation, as a matter of law; (2) there is insufficient evidence that Patriot "should" have known that White was not following Patriot time recording policies; and (3) at the end of the day, the facts simply do not fit the requirements for an off-the-clock recovery. Plaintiff's response does not provide a basis to sustain White's off-the-clock decision of the trial court.

Holding that off-the-clock liability should be found here would be *contra* to well established law, particularly when considering (1) that Patriot had time-recording requirements that White followed to be paid thousands of dollars for thousands of hours of overtime, (2) that he was a completely autonomous manager, setting his own schedule. In summary:

- Patriot had rules of required time recording.
- White knew them.
- He could record them on his computer at work or at home, he could record them on time sheets, he could record time through the help of his administrative assistants – all were available to and employed by him.
- He estimated his time and told his assistants to increase his hours.

- He knew how to correct time, to whom to go to on his staff and in payroll.
- And White did so, as needed.
- He was a long-term manager of the Fabrication Shop that grew to 130 people.
- He worked to ensure correct time was input for his personnel, making sure corrections were made, if needed for any problem or question that arose.
- He recorded thousands of hours of overtime and was paid without question.
- He was responsible for ensuring time compliance.
- He used administrative people to ensure his and other time as correctly input.
- He never complained about not being paid.
- He never went to Patriot's Human Resources ("HR" or payroll to complain.
- He never drafted an email to anyone about not being paid.
- While at Patriot and for eight months after he left, White never sought more overtime.
- He was paid for all the thousands of hours of overtime he submitted.
- He would have been paid for any and all hours of overtime.
- **No one ever said to work off the clock.**
- **No one coerced him.**
- **No one prevented him from entering time.**
- **No one discouraged him from putting in his compensable time.**
- **No one instructed him not to put in his time correctly.**
- Either his time that he input and was paid for is correct, or he chose to not to input the time for purely personal reasons.
- As a manager he had tremendous authority and autonomy— given free rein to do was he pleased and when.
- He did not work a shift, but worked as he chose, when and where.
- Everyone assumed he was being paid correctly.  The hours of overtime were enormous, and every hour was paid.
- Everyone assumed he was correctly inputting his time.

- White's claim for overtime came over eight months after he left Patriot, started a business when the COVID pandemic started, and the business did not succeed.
- White kept a separate record of his time, which coincided with the official time record and says nothing about off-the-clock time.
- His vague and sparse testimony about a "couple of" "commiserating" conversations with Eric Herzog is insufficient as a matter of law to establish that Patriot knew he was working off-the-clock and not being paid for his work time.
- Herzog told him to record his time, in any case.

As a matter of law, the facts collapsed above do not justify the trial court's conclusions, there is insufficient evidence to support White's claim, and his response is insufficient to have the trial court's decision affirmed—thus, the judgment must be reversed and rendered for Patriot.

## B. REPLY ARGUMENT AND AUTHORITIES

**1. Without Question, an Employee Should Be Paid for All Hours the Employer "Permits" and "Suffers" Him to Work; thus, Liability Follows, if the Employer *Knows* that the Employee Is Working, Not Recording Time, and not Being Paid—*But that is Not What Occurred Here.***

There is no question that employees should be paid for all hours worked. As this Court has stated, an employer may not "stand idly by" when the employer knows work has been performed without compensation. *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir.

1995) (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414 (9th Cir.1981)).

But that admonition does not apply here:  Patriot did not stand about idly allowing White to work without being paid.  Instead, it paid him for every hour he recorded, which were thousands of hours of overtime, worth thousands of dollars.  ROA.741. ROA.955-57. ROA.1700-04. ROA.1612.  *See also* ROA.850-51 (comparing the large amount of overtime in 2018 to 2019, when it increased, though he worked only nine months).

In fact, Patriot regularly pays for personnel who are "off-site" working and turning in time, and it has policies covering that remote work, which White did not follow.   ROA.691. ROA.864. *See* ROA.1520. ROA.992. ROA.1521. ROA.925-26.  White's claim is that he did not turn in time when he was away from the Patriot site and shop, but there is no question that he could have – easily – but he either did so in the time submitted, or he chose not to do so, for personal, not work-demanded reasons. ROA.869-70. ROA.869-70, 936. *See* also ROA.705-06. No one at Patriot would know the difference because the time he submitted with thousands of hours of time could have reflected any time worked that he

chose to put in – he controlled his hours, his work, and his time recording. ROA.725.

### 2. White's Own Personal Time Log Contradicts His Claim.

Moreover, the fact that he had a personal time log (spreadsheet), *separate and apart from what he submitted to Patriot*, and the fact that the personal log has **no** off-the-clock hours on it (ROA.895-896) strongly suggests that the allegations in the lawsuit cannot be sustained. ROA.1869-1924. *See generally* ROA.892-896. ROA.876-78. *See generally* ROA.892-896. ROA.876-78.

### 3. White's Scant and Vague Testimony about Herzog Is Insufficient and Cannot Legally Be the Basis for Liability as an Off-the-Clock Claim; Rather, the Facts Here, White's Position and Autonomy, and the Lack of Complaints (until Eight Months after He Left Patriot) Do Not Justify the Imposition of Off-the-Clock Liability.

As noted further below, White's argument is based on insubstantial, insufficient, and exceedingly vague (and at times contradictory) testimony about Eric Herzog that does not justify the imposition of off-the-clock lability, as a matter of law. Rather, it is patently unfair to say Patriot owes White hours and hours of additional overtime dollars, over the course of three years—given that White was a trusted, autonomous manager,  given his complete freedom, given that

he never complained, given that there were well known rules for time entry, given that he followed those rules and kept a similar personal log, and given no one told him not to write down his time, or coerced him or instructed him not to record hours. ROA.744-45. ROA.724-25. ROA.738-39, 750-51, ROA.936-37.

### 4. The Error Here Is that the Trial Court Essentially Treated White as if He Were a Shift Worker—*But White Was Not a Shift Worker—He Controlled His Hours 100% and Recorded His Time on His Own.*

Where the trial court erred is in treating White the same as other hourly, generally lower level, shift employees who are, in some cases, forced to work off the clock, or prevented from entering time, with little recourse to control, change or correct time entered. When employers essentially order the off-the-clock work, prevent correct time to be entered, or generally take advantage of employees, getting free hours of work without pay, that is when off-the-clock work must be paid.

But that is not the case here, as White set his schedule, came and went as he wanted, and recorded his own time. ROA.708-09. ROA.725. ROA.738-39. ROA.750-51. ROA.936-37. *See generally* ROA.880-85. And his hours reflected just that. ROA.946-47. ROA.950. As a matter of law, there is no evidence of coercion, discouragement, instruction, or

instruction, which takes this case out of the requirement that Patriot's time-recording policies govern here.

**5. Instead, White Was Required, <u>*as He Well Knew*</u>, to Adhere to Patriot's Time Recording Requirements; *His Failure to Do So Should not Be Permitted, Particularly as There Is No Evidence of Coercion to Not Record Time, or Prevention from Inputting Time, or Discouragement or Instruction about Not Inputting Time.***

Work and compensation are parts of a two-way street. Employers ask employees to work and must pay for that work, but employees must adhere to employer time-recording rules, as well. *See Von Friewalde, v. Boeing Aerospace Ops., Inc.,* 339 Fed.Appx. 448, 459 (5th Cir.2009) ("[A]n employee has a duty to notify his employer when he is working extra hours.....[W]e have expressly rejected the notion that an employer does "'not have the right to require an employee to adhere to its procedures for claiming overtime.'" (citations omitted)")(*citing Newton,* 47 F.3d at 749-50 (rejecting claim for alleged unpaid overtime where defendant "established specific procedures to be followed in order to receive payment for overtime" and plaintiff did not follow those procedures); *see also White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876-77 (6th Cir. 2012), *cert. denied* 571 U.S. 886 (2013) (no liability if employee fails

to follow employer recording process and no evidence of instruction otherwise, discouragement of reporting, or prevention by employer).

White recognized as much, agreeing that he "had a responsibility to input time correctly," while the Company had "the responsibility of paying" him right, ROA.943). Thus, if White did not follow these rules, it is unfair and without legal basis to impose liability when the employer thought, legitimately and based on its established policy and scores of hours already submitted, that the employee had submitted all work hours properly, especially when that someone was a trusted and autonomous manager, who obviously knew better and never complained. ROA.716. ROA.745. ROA.746. An employer, Patriot, is "entitled to rely" on employee-manager, White, to follow Company rules. *See Nieddu v. Lifetime Fitness, Inc.,* 38 F.Supp.3d 849, 864 (S.D. Tex. 2014) (summary judgment for employer) ("LTF was entitled to rely on Nieddu to comply with LTF's timekeeping policies and to assume that he was not falsifying his time worked. ") (citation omitted). *See also Richardson v. Alliance Residential Co.,* Civ. Action No. ELH-18-1114, 2020 WL 551316, at *10 (D. Md. Feb. 4, 2020) (no liability if employee fails to follow employer rules) (citation omitted); *Forrester,* 646 F.2d at 414; *Millington*

*v. Morrow County Bd. of Comm'rs,* No. 2:06-cv-347, 2007 WL 2908817, at

*10 (S.D. Ohio Oct. 4, 2007) ("[I]t was reasonable for the employer to rely

on the time sheets submitted by the employee for payroll purposes where

there was no evidence that the employer encouraged workers to falsely

report their hours.") (citing *Newton,* 47 F.3d at 750); *Brumbelow*, 462

F.2d at 1327).

Consideration of off-the-clock time is not formulaic. Nor should it

be. No employer should face a surprise off-the-clock claim, when the

employer had time-keeping rules and, thus, reasonably believed, that the

employee was fully and amply paid for the time he put in. When the

employer, Patriot, has not forced the off-the-clock work or prevented time

input, and when the employee-manager, White, was in control of both his

working hours and time input, when he knew the rules, the claim fails

(he claimed that he knew "the basics" (ROA.806) and what overtime was,

ROA.905) but also admitted knowing the Patriot rules, for which he was

responsible as a manager, see generally ROA.920-34), but that is also

belied by White's action as a manager, his knowledge of Patriot payroll,

and his own personal time recording). These facts lead to only one

conclusion: White's off-the-clock claim is unsustainable.

White never once complained.    ROA.910.  ROA.704.  ROA.891. ROA.706, 722-23. ROA.958. ROA.745. ROA.717. His first complaint came eight months after he left Patriot, and he never brought the matter to the attention of the Texas Workforce Commission either.  ROA.970.   There was no taking advantage of an employee, there is no suffering, permitting much less demanding of unpaid overtime or refusal to pay same.

To say otherwise, turns off-the-clock law on its head.

What underlies the requirement that unrecorded time should be paid is a sense of fairness—that the employee did the work and the employer, in essence, got away with not paying for work, knowing the time was not being paid. That's the opposite of what happened here.

## 6. Even Assuming that White Had Worked Unreported Hours, that Is Not the Deciding Factor.

As this Court knows whether the employee may have done the work or not that is the deciding factor.  The issue is:  Should the employer be forced to pay for previously unknown, un-complained about, alleged hours, given the circumstances of the employee and the knowledge of the employer—particularly    given    the    employer's    time    recording requirements and this Plaintiff's autonomous managerial work.  The facts here lead to only one conclusion—that Patriot was justified in

requiring White "to adhere to its procedures for claiming overtime."

*Newton,* 47 F.3d at 749.

### 7. There Are Very Limited Exceptions to the Rule about Adhering to the Employer's Time-keeping Rules—*None of which Apply to White.*

For example, what *Newton* cited as exceptions to this rule—coercion, encouragement, and prevention—are completely absent here. *Id.* at 750; *see also Edmiston v. Skinnys, Inc.*2003 WL 22228737, at *5-6 (N.D. Tex. Sept. 15, 2023) (distinguishing *Newton* where there was evidence of "encouragement" of unrecorded work time).

### 8. Patriot Did Not Have the Required Knowledge that White Was Not Being Compensated for His Time.

What is missing here is that (1) Plaintiff, who bears the burden of proof, has not presented sufficient evidence of Patriot's knowledge; (2) that White supposedly was not compensated for all his work. *See Meadows v. NCR Corp.,* No. 16 CV 6221, 2017 WL 5192009, at *4 (N.D. Ill. Nov. 9, 2017).

Knowledge is not based on what might have been or what could have been, but <u>*what the employe actually should have known*</u>. *Newton,* 47 F.3d at 749 (employer's access to records reflecting uncompensated overtime "does not constitute constructive knowledge"). Moreover, the

knowledge must be that the employer knows the employee is working without being paid. *Perry v. City of New York*, 13-CV-1015 (VSB), 2019 WL 1146581, at *7 (S.D.N.Y. March 13, 2019) (proof of knowledge of work without compensation required) (citation and quotation omitted); *White*, 699 F.3d at 877 (failure to inform employer that employee was not being paid for missing mealtimes). *Boelk v. AT&T Teleholdings, Inc.,* No. 12-cv-40-bbc, 2013 WL 377251, at *8 (W.D. Wis. July 19, 2013) (knowledge of work does not equal knowledge of not being compensated for work). *See also Gaines v. K-Five Const. Corp.,* 742 F.3d 256, 270-71 (7th Cir. 2014) (seeing employee work early is not the same as knowing that the person was not recording and being paid for work time); *Darrikhuma v. Southland Corp.,* 975 F.Supp. 778, 783–84 (D.Md.1997), *aff'd,* 129 F.3d 1258 (4th Cir.1997) (knowledge weekend work did not equate to knowledge of uncompensated time).

This is not a matter of presupposing or constructive knowledge; it is a matter of determining "reasonable diligence"—was the employer reasonably diligent given what the employer knew about the particular employee and the particular facts of the situation. *See Allen v. City of Chicago***,** 865 F.3d 936, 943 (7th Cir. 2017), *cert. denied*, 583 U.S. 1182

(2018) ("The reasonable diligence standard asks what the employer should have known, not what "it could have known." *Hertz*, 566 F.3d at 782.") (citations omitted).   When there are rules for time recording and when there is no prevention of time recording, coercion, threats, and the like, then the off-the-clock allegation must be rejected.

As the *Davis* case noted,

> As defined in 29 U.S.C. § 203(g), "'Employ' includes to suffer or permit to work." The words "suffer" and "permit" as used in §203(g) have been consistently interpreted to mean with the knowledge of the employer. *See Forrester v. Roth's IGA Foodliner, Inc.,* 646 F.2d 413, 414 (9th Cir.1981); *Fox v. Summit King Mines,* 143 F.2d 926, 932 (9th Cir.1944); *Neal v. Braughton,* 111 F.Supp. 775, 782 (W.D.Ark.1953). Therefore, in order to prove that he is "employed" for purposes of the Act, it is necessary for a plaintiff to show that his employer had knowledge, either actual or constructive, of his overtime work. The case law uniformly supports this proposition. *See Forrester, supra; Swanson v. Westfield News Advertiser,* 26 Wage & Hour Cas. (BNA) 918, 920 (D.Mass.1983); *Summerfield v. Photo-Electronics, Inc.,* 26 Wage & Hour Cas. (BNA) 608, 612 (E.D.Pa.1983); *Neal, supra.*

942 F.2d at 1276-77.

Essentially, this means that an employer may not allow work to proceed knowing it would be unpaid, and that in turns requires proof of a "pattern and practice" of, or "acquiescence" in, allowing the work to proceed without compensation—and a sometime comment or question here or there is not enough, particularly when a large amount of

unrecorded time is claimed. *See, e.g.*, *Pforr v. Food Lion, Inc.,* 851 F.2d 106, 109 (4th Cir. 1988) ("few incidents of knowledge" insufficient as a matter of law when evidence of claimed off-the-clock work was both significant and for three years); *Boelk,* 2013 WL 377251, at *10-11 (lack of notice about not being compensated for work time). Also, if there may be proof of off-the-clock work that does not prove knowledge. *See, e.g.*, *Pforr,* 851 F.2d at 109 ("While Plaintiffs' Exhibits 4 and 7 are sufficient as estimates of plaintiffs' uncompensated overtime hours, they do not reflect any measure of proof of employer allowance of such work.").

Here the reality is that White chose, on his own, not to write down time for his own personal reasons (ROA.713. ROA.825, "self-preservation"; or "[i]nvestment in my future," ROA.862). In none of the emails is it expected, ordered, or instructed that White had to respond or do anything after hours. While it was "important" to him to respond to emails, for example, he offers no testimony at all about anyone telling him to do so. ROA.827. No one told him not to write down his time, or told him that he would not be paid. The reality is that Patriot paid for White's thousands of dollars of overtime, assuming that its trusted Shop Manager was following the rules.

**9. Patriot's Time-recording Policies Dispel an Assumption of Knowledge and Estop White from Claiming Off-the-Clock Compensation.**

Critical to this analysis, as noted, is the fact that employers are generally not liable if they have an established policy and the employee does not follow that process—that is, liability may be fixed only under limited circumstances—if the employer prevents the employee's use of the process or coerces the underreporting of time. *See White*, 699 F.3d at 876 ("if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process.").

Similarly, this Court has found that an employee may be "estopped" from claiming something different than what is on his/her time sheets. *See Brumbelow v. Quality Mills, Inc.,* 462 F.2d 1324, 1327 (5th Cir.1972) (employee "could not profit from her own wrong in furnishing false data to the employer") (citations omitted); *accord Newton,* 47 F.3d at 749. Thus, the employer must affirmatively do or say something to "cause the employees to keep an incorrect record." *See Walling v. Woodruff,* 49 F.Supp. 52, 56 (M.D.Ga.1942) ( "An employer does not violate the act or the regulation by relying in good faith upon employees to keep and report

their own time and by using the record so made as the record of time required by the regulation, if neither the employer nor his agents do or say anything to cause the employees to keep an incorrect record."). However, there is no violation "[I]f the 'employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours . . . .' " *Harvill v. Westward Comms., LLC,* 433 F.3d 428, 441 (5th Cir.2008) (*quoting* Forrester, 646.2d at 414).

The facts here do not support and cannot be the basis of an off-the-clock claim. *See Laughlin v. Jim Fischer, Inc.*, Case I, 16-C-1342, 2019 WL 1440406, at *3 (E.D. Wis. May 16, 2019) ("facts of each case")(citation omitted); *Richardson,* 2020 WL 551316, at *9 (D. Md. Feb. 4, 2020)(same) (citation omitted). The record is completely silent about Patriot ever suggesting that White could not or should not record his time. The bottom line is that no agent of Patriot did anything to cause White to keep an incorrect record. Consequently, White is bound by the time-recording policies of Patriot and by the time he input and was paid for.

**10. Coercion Might Be a Basis for Overcoming the Presumption that Time-recording Policies Had to be Followed—*But White Has No Evidence of "Coercion"—to the Opposite*.**

16

Off-the-clock liability may exist if an employer coerces an employee to work unrecorded, uncompensated time or prevents time entries. *See, e.g.*, *Davis v. Food Lion, Inc.,* 792 F.2d 1274, 1276 (4th Cir.1986) ( "high-pressured system" on which employee/market manager were evaluated and criticized); *Meadows,* 2017 WL 5192009, at *9 (evidence of management instruction that time not be recorded).

That is not the case here, there is no evidence that White was ever coerced or told to work outside of recorded compensation time.  He recorded the time he wished, just like he worked when he wished, and he knew exactly what he needed to do—because Patriot would pay for all time he input, without question.

**11.    Forcing or Pressuring an Employee to Follow a Set Schedule and Only Record Those Scheduled Hours Might Be a Basis for Overcoming the Presumption that Time-recording Policies Had to be Followed—*But White Has No Evidence of Being Forced or Pressured to Record, for Example, Only Shift Hours—to the Opposite.***

Off-the-clock may exist where is pressure to conform work to a certain schedule. *See, e.g.*, *Davis,* 792 F.2d at 1276 (employee/market manager were threatened with suspension or termination for not working within certain set hours); *Meadows,* 2017 WL 5192009, at *10

(evidence that managers "instructed" employees to not to record time); *see also Edmiston,* 2003 WL 22228737, at *5 (store policy allowing only a certain number of work hours); *Perry,* 2019 WL 1146581, at *7 (plaintiff required to offer evidence of employer's "single decision, plan, or policy" to not compensate employees for time) (citation omitted).

That is not the case here. White set his schedule, came and went as he pleased and was not tied or forced in any way not to record hours. ROA.708-09. ROA.725. ROA.738-39. ROA.750-51. ROA.936-37. *See generally* ROA.880-85. He made those choices (if they were made) on his own, for personal reasons, against the Patriot time-recording requirements.

## 12. Deletion of Time or a Refusal to Pay Might Be a Basis for Overcoming the Presumption that Time-recording Policies Had to be Followed—*But White Has No Evidence Having His Time Deleted—to the Opposite.*

Evidence of knowledge can be found in a manager deleting time or telling an employee to do so, or refusing to pay. As noted in *Boelk,* the following are examples of evidence of knowledge:

> *Brennan v. Quest Communications International, Inc.,* 727 F.Supp.2d 751, 761 (D.Minn.2010) (denying summary judgment in case in which plaintiffs presented evidence that their employer "insisted that [they] put down a lunch every day ... even though [they] didn't ... take a lunch"); *Skelton v. American*

*Intercontinental University Online,* 382 F.Supp.2d 1068, 1072 (N.D.Ill.2005) ( "Plaintiffs have testified that they were repeatedly instructed to record on their time sheets only forty hours of work per week, despite the number of hours actually worked, and that if they did report overtime, they were required to change their time sheets before they were submitted."); *Cunningham v. Gibson Electric Co.,* 43 F.Supp.2d 965, 976 (N.D.Ill.1999) (defendant's president "personally instructed" plaintiff not to report his overtime hours).

*Boelk,* 2013 WL 377251, at *7.

These are not White's situation in any way. Every hour he recorded was paid.

### 13. "Squelching" Time-recoding Might Be a Basis for Overcoming the Presumption that Time-recording Policies Had to be Followed—*But White Has No Evidence of His Time Being "Squelched"—to the Opposite.*

Without question, a policy about recording time does not save an employer, on the one hand, if, at the same time, the employer is coercing employees to violate the law and/or prevents them from recording time. *See Meadows,* 2017 WL 5192009, at *9. This is so because effectively the employer's "practices effectively 'squelched truthful responses' in overtime reports." *Id.* (citations omitted).

Again, that's not this case. There never was any action by Patriot or its management to "squelch" White's recording of time, and he offered not one piece of evidence that Patriot either coerced him or squelched his

time recording. To the opposite, White set his own schedule, working where and when he wanted, as well as determining the number of hours that he wanted to input.

### 14. Actual Knowledge of Falsified Records Might Be a Basis for Overcoming the Presumption that Time-recording Policies Had to be Followed—*But White Has No Evidence of that Patriot Knew He Had Falsified Records—to the Opposite.*

Off-the-clock liability may be based on an employer's knowledge that the employee falsified records. *See, e.g.*, *Davis,* 792 F.2d at 1278 (no evidence employer should have "anticipated" employees would "routinely falsify their time records in violation of established company policy").

As above, no one thought White was falsifying records. White's enormous overtime hours, for which he was fully compensated, suggested the opposite, that White was capturing all of his recordable work time, per Patriot requirements. Certainly, Patriot paid him for every hour he spent. ROA.957. Further, White repeatedly denied falsifying his records, he knew that false time was wrong, and he stated that his time was accurate; turning in accurate time was part of his job duties as a manager. ROA.705. ROA.738-40. *See* ROA.738-39, 750-51. ROA.936-37. *See generally* ROA.880-85. ROA.673-74. ROA.688-89. ROA.738-39.

ROA.750-51. ROA.936-37. ROA.894. ROA.954. Had he wanted to "fix" an error he could have, and he knew what to do – but he never did it. ROA.701, 742, 749. ROA.701. ROA.742. ROA.748-49. ROA.941-42 ("And did they correct the time if you needed it? Yes, ma'am.").

The lack of "false" records is also underscored by the fact that even White's own personal log of time never reflected time other than what he officially turned. ROA.895-896. In short, these uncontested facts would lead to the only conclusion that Patriot had a right to rely on the time that White submitted as being accurate and true, and that, as a result, he was fully compensated for his work time.

**15. Had White Complained that Might Be a Factor for Overcoming the Presumption that Time-recording Policies Had to be Followed—*But White Never Complained.***

Also, significant are White's lack of complaints (*e.g.*, ROA.957-58, no emails, memos, or complaints to HR), dispelling a basis for compensable time being owed. *See Davis,* 792 F.2d at 1278; *see also Schremp v. Langlade County*, No. 11-C-590,  2012 WL 3113177, at *3 (E.D. Wis. July 31, 2012). White never complained verbally or in writing, never corrected his time, never sought a change through HR or payroll.

**16.    White's Personal Choices about Not Recording Time Do Not Are Not Facts for Overcoming the Presumption that Patriot's Time-recording Policies Had to be Followed.**

And White's personal choices of not recording time are not matters that demonstrate knowledge by Patriot. *See, e.g.*, *Davis,* 792 F.2d at 1278 (employees wanted to "make themselves look better"); *Boelk,* 2013 WL 377251, at *8 (employees voluntarily chose not to report time).

In this regard, White seems to argue both that (1) he did not know he was to enter his "off-site" or "off-facility" time; and that (2) he and Eric Herzog, "commiserated" about their long hours "a couple of times." ROA.852. The truth is that White simply chose, as was his prerogative, to record whatever hours he wanted, for whatever work he wanted to do, whenever he wanted to do it.

**17.    White's Case Hangs on His Reported "Couple of" Conversations with Herzog, *But that Evidence Is Insufficient as a Matter of Law.***

A careful review of White's testimony demonstrates that his discussion with Herzog was insufficient as a matter of law for an off-the-clock finding.

Every fact about White is, at bottom, agreed. There is no question really about his autonomy, the trust Patriot place in him, his knowledge

of procedures, his complete control over his work, schedule and time input, the lack of instruction or coercion, the fact that Patriot never once questioned or disputed his time, or that it paid all of his many hours of straight and overtime work. At core, White has no evidence of knowledge from very typical cases setting out such examples. There is also no question that White is a unique employee seeking overtime pay, given his position, autonomy, and the like. He was not on a shift (ROA.952), he was not ordered to work or not work any set hours. No one expected him not to turn in his time. None of this White disputes.

The sole evidence that White hangs his hat on is his reported conversations that he says he had with Herzog. While Plaintiff argues with grand sweeps about what Herzog knew, the evidence is so meager to be insufficient for an off-the-clock claim as a matter of law, when Patriot clearly expected White to follow its time-recording rules (and he did, garnering thousands of dollars in pay). The testimony is below:

"It came up a couple of times."

"Both of us just joked."

"Everyone knew."

"The Patriot way."

"Lifers worked those kind of hours."

"Sometimes it was commiserating."

"I wouldn't say often, but it came up."

"I think we tried to stay away from specific pay."

"We would definitely commiserate on our Patriot way."

ROA.842,853, 854,855,856,1024.

The point is that this testimony is so sparse, built on such vague generalities about "the Patriot way," and it is more in the form of "commiserating" with Herzog, as a colleague, about their long hours in general (which he mentions twice in testimony), did not often come up ("a couple of times" – not "often"), and were stated as jokes. Further, as this Court knows, Herzog's testimony was that he did once talk with White (out of concern for the work hours that White was keeping), and Herzog told White to record his time. ROA.994. *See also* ROA.860 (Patriot was concerned about him "holistically").

Given all the undisputed facts about White, his autonomous and trusted position, his schedule control, the large amount of overtime he input, and the fact that he has sought additional overtime over three years, the evidence concerning a "couple" of Herzog conversations—

unspecified in any dates or particulars of what Herzog supposedly said, and more in the form of employees griping about work generally ("commiserating")—is simply not enough for liability to attach. This is not a case of an employee working "regular business hours" or a set shift, this is not a case where managers affirmatively engaged in "after hours" work with White, assuming he was not recording his time, and this is not a case where the managers affirmatively rejected paying overtime because the company could pay only for regular hours, not for overtime. *Cf. Richardson,* 2020 WL 551316, at *11-12 (evidence combined raised question about supervisors who stated there was no money for additional hours, though they freely communicating with employee after formal business hours).

Furthermore, just because Herzog may have "commiserated" a couple of times with White about the hours that they had to put in, is not in and of itself a "red flag" that White was not being paid for the hours that he put in. *See White*, 699 F.3d at 872, 876 (insufficient evidence; employee noted occasionally that she was missing meal times); *Boelk,* 2013 WL 377251, at *10 (occasional comments insufficient); *Pforr,* 851 F.2d at 109 ("We find that the trial court erred in basing its finding of

such a large number of off-the-clock hours on such a few incidents of employer knowledge. It is not enough for a plaintiff to establish his employer's knowledge of a few incidents of off-the-clock work, and upon this claim of knowledge, submit a record of his three years of alleged off-the-clock work.").

Similarly in *Newton*, despite the fact that "unauthorized overtime hours" had come up in discussion with his supervisors, this Court found that this was insufficient for the City employer to be required to monitor the employee's time sheets for falsification. *Newton,* 47 F.3d at 749 (City had right to require employee to adhere to its procedures). Similarly, Patriot had a right to assume that White would follow its rules and record his hours properly; he was the longtime Shop Manager, leading up to 130 employees, he knew about proper time recording, controlled his work hours and time entries (even estimating his entries), he entered over a thousand hours of overtime, and came and went as he wished. Moreover, the fact that White estimated his time and his assistants would increase time (ROA.836, "rounded up"; ROA.940, he "roughly" told his administrative assistant), in some instances also suggests that he sometimes included time when he not officially clocked in, choosing not

to do so other times.  *See Schremp,* 2012 WL 3113177, at *4 ("Plaintiff acknowledged that he sometimes reported his overtime work on his timesheets and sometimes he allegedly did not.").

Combined, these facts simply mean that there were no major "red flags" that White was not entering his time correctly over three years. He knew better.  *See, e.g.*, *Gaines,* 742 F.3d at 270-71 ("simple knowledge that the plaintiff came to work early was not enough to conclude that the employer knew or should have known that the plaintiff started working early. . . .").

Thus, without evidence of management coercion, instruction, deletion of time, or refusal to pay, White's evidence is simply insufficient as a matter of law to permit a conclusion that Patriot owes him additional overtime hours.   Patriot's time records are presumptively assumed to be correct (and White says they were not falsified) and preclude White's recovery here, and that is so because there is no evidence of instruction to do otherwise.  *See Schremp*, 2012 WL 3113177, at *3 ("Where an employee maintains time records and there is no indication that the employer instructed the employee not to accurately report his time, the accurate time records will establish the amount of damages, and the

general rule that precludes recovery of uncertain or speculative damages is appropriate.") (citation omitted).

A conversation here or there, an on-occasion, "commiserating," joking about number of work hours, is not sufficient (and should not be) as a matter of law for alerting Patriot that White, a longtime trusted manager, was not following its policies and procedures and thus was not being paid right.

And all of this is unscored by the fact that White never complained, never asked for more money while he worked at Patriot, never brought the issue up with the TWC, and sought more money for  eight months after he left Patriot (only doing so when motivated by separation by Patriot and failed business). *See Forrester,* 646 F.2d at 414 (former employee "did not mention any unpaid overtime work" prior to filing complaint).

The issue is not commiserating about long hours, but whether Patriot would have known that White did not properly record his time and was not paid for scores of hours *over three years* because he did not follow Company policy.  *See Richardson,* 2020 WL 551316, at *12 (occasional texts do not establish "consistent overtime work for a long

period of time." *Butler*, 55 F. Supp. 3d at 803."). *See Schremp,* 2012 WL 3113177, at *3 ("The fact that Plaintiff sometimes performed work outside his regularly scheduled work hours, however, does not mean that the County Board Supervisors knew that he was not being *compensated* for such time.") (citation omitted).

White cannot and should not have it both ways – **on the one hand**, that he knew about Patriot policies, had tons of autonomy and freedom at Patriot, that Patriot trusted him as a manger, that he had responsibility for himself and others' time, that he had knew exactly what to do to correct time (he would "walk into payroll" and get any mistake fixed[1]), that he input thousands of hours of overtime, that he came and went and input time on his own (without any set shift), that he could and did approximate his time, and that he never kept a record his such time, instead, his personal log shows no such extra unpaid time – **and, yet, on the other hand**, that he can now demand scores more hours over a three-year period, when he never sought to correct his time or to be paid more.

Furthermore, Herzog specifically told him to correct any time omissions. ROA.994. *See Pforr,* 851 F.2d at 107 (supervisors testified

_____

[1] ROA.941-42.

that when they discovered "isolated incidents" of plaintiffs working off-the-clock they instructed them to stop).

## C. CONCLUSION

White's testimony about Herzog is insufficient as a matter of law to support his off-the-clock claim. Without evidence of coercion, prevention, refusal and the like, Patriot had a right to assume that White followed its time-recording policies, as the law requires. The conclusion that Patriot did not have actual knowledge is further supported because White worked on his own, set his own hours, worked all kinds of different hours, did not work a shift, and was an autonomous, trusted manager. There would not be any reason in this case for Patriot to be looking over White's shoulder as he input time. The presumption was that White was doing exactly as it appeared, inputting his time correctly and without complaint, following Patriot policy, and being paid for all hours of overtime. Finally, there is no evidence that there was any policy demanding, suggesting, or instructing White to limit his overtime; to the opposite, all time recorded was paid, without question.

For all these reasons, the trial court's judgment should be reversed, and this Court should render a take-nothing judgment in favor of

Appellant, and such other and further relief, in law or equity that Appellant shows itself to be justly entitled.

January 29, 2024                    Respectfully submitted,

                                   */s/ Andrea M. Johnson*
                                   Andrea M. Johnson
                                   Texas State Bar No.10679600
                                   KANE RUSSELL COLEMAN LOGAN PC
                                   5151 San Felipe Street, Suite 800
                                   Houston, Texas 77056
                                   Phone: (713) 425-7433
                                   Fax: (713) 425-7700
                                   Email: ajohnson@krcl.com

                                   **Counsel for Appellant
                                   Patriot Erectors LLC**

## CERTIFICATE OF SERVICE

I certify that on January 29, 2023, the foregoing Reply Brief was filed electronically using the Court's CM/ECF system, which will give notice of the filing to counsel for Appellee.

I further certify that (1) the required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

I further certify that I will mail the correct number of paper copies of the foregoing document to the Clerk of the Court when requested.

*/s/ Andrea M. Johnson*
Andrea M. Johnson

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(s)(7)(B)(i) because this brief contains 6,430 words. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook font size 14.

/s/ Andrea M. Johnson
Andrea M. Johnson